IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES E. MATTISON, JR.,                  *

     Plaintiff,                          *

v.                                         *

                                                 **CIVIL NO. JKB-21-00168**

MARYLAND TRANSIT
ADMINISTRATION,                            *

     Defendant.                          *

    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Plaintiff Charles E. Mattison, Jr., a former employee of the Maryland Transit Administration (the "MTA"), brings suit against the MTA for discrimination and retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 794 (Count I); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, *et seq.* (Count II); the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601, *et seq.* (Count III); and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* (Count IV). Mattison alleges retaliation and retaliatory termination, failure to accommodate, hostile work environment, disparate treatment, and discriminatory demotion. Now pending before the Court is the MTA's Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF No. 37.) The Motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

1

## I.    *Background*[1]

Mattison was employed with the MTA from about May 20, 2011 to about January 13, 2021. (Sec. Am. Compl. ¶¶ 11, 85, ECF No. 35.) He suffers from diverticulitis, which is a digestive tract disease that results in extreme pain and can be sufficiently severe so as to prevent the ability to function normally, necessitating intermittent time off and bedrest. (*Id.* ¶¶ 37–40.) From 2012 to 2016, Mattison applied for and was granted FMLA leave for his diverticulitis. (*Id.* ¶ 75.)

In June 2012, Mattison filed a request for FMLA leave and was demoted two days later; he thereafter filed an EEOC charge alleging disability discrimination and retaliation. (*Id.* ¶¶ 13–14.) The EEOC concluded that there was "reasonable cause to believe that [the MTA] ha[d] violated" the ADA. (*Id.* ¶ 16.) Mattison eventually filed suit in this Court in 2015 and the parties settled in 2017. (*Id.* ¶¶ 17–18.)

In July 2017, Mattison sustained a work-related back injury and was placed out of work on Workman's Compensation leave until March 2018. (*Id.* ¶¶ 20–21.) Upon his return to work in March 2018, he was written up for missing days, despite being excusably out on Workman's Compensation leave. (*Id.* ¶ 21.) On March 31, 2018, Mattison was approved for a surgery relating to his back injury and was out for more than thirty days. (*Id.* ¶¶ 22–23.) MTA policy required that Mattison seek approval to return to work from an MTA doctor following his surgery. (*Id.* ¶¶ 23–24.) However, on May 4 and 5, 2018, Mattison was charged with being "AWOL" despite still waiting on approval to return to work. (*Id.*)

On May 9, 2018, when he returned to work, Mattison "was told that he missed too many days, that he had received two AWOLs, and that he was being taken out of service to be

---

[1]    ⸗ The facts in this section are taken from the Second Amended Complaint. The facts are construed in the light most favorable to Mattison. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

terminated." (*Id.* ¶ 25.) Mattison filed a grievance challenging the charge that he had taken unauthorized leave and challenging his termination. (*Id.* ¶ 26.) He prevailed in his grievance on June 7, 2018. (*Id.*) Mattison alleges that, during the grievance hearing, Superintendent Jose Barre and Supervisor Darnell Mayo challenged the authenticity of documents showing that Mattison's absences were justified. (*Id.* ¶ 30.) Mattison further alleges that his union representatives "and others overheard Mayo and Barre talking about that [sic] Plaintiff had sued the MTA and settled and that Mayo, Barre, and the MTA were attempting to get rid of Plaintiff." (*Id.* ¶ 31.) Mattison contends that, although he prevailed in his grievance, he has not received the entirety of his back pay, that his sick time has not been restored, and that his record regarding absences has yet to be corrected. (*Id.* ¶¶ 27–28.)

On June 25, 2018, Mattison filed an EEOC charge alleging race and disability discrimination and retaliation "for being improperly charged with unauthorized leaves when he was on workers compensation leave and for being suspended with the intent of termination without cause." (*Id.* ¶ 32.) After he filed the June 2018 EEOC charge, the MTA "amped up its campaign of harassment and retaliation" and, on October 1, 2018, Mattison filed a grievance relating to harassment by his supervisor, Russell Lopes. (*Id.* ¶ 33.)

Mattison alleges that Lopes was hyper-critical and questioned the amount of time it took Mattison to complete tasks although he was meeting his workload requirements. (*Id.*) Although Mattison met his daily quota, he would be verbally reprimanded or written up if he did not meet certain artificial time limits set by Lopes, which were not imposed on other employees. (*Id.* ¶ 48.) Mattison further alleges that he was targeted to perform "roll calls," which "entailed being sent out at the end of the shift to retrieve broken down buses" and was a job typically given to junior employees. (*Id.* ¶ 47.) This would typically require Mattison to work beyond his scheduled shift.

3

(*Id.*) Mattison alleges that Lopes was aware that stress worsened his diverticulitis symptoms and that "Lopes with knowledge and intent of the MTA placed Plaintiff under undue stress for purposes of making Plaintiff's working conditions intolerable and with the intent to force him out." (*Id.* ¶ 34.)

In April 2020, Mattison applied for FMLA leave, requesting one to two days off every four to six months. (*Id.* ¶ 77.) Due to the COVID-19 pandemic, Mattison could not personally drop off the application, so he applied through his primary care physician, who sent the application to the MTA by facsimile. (*Id.* ¶ 78.) Mattison did not hear from the MTA about the status of this application—a situation Mattison alleges is common—despite repeated phone calls. (*Id.* ¶ 79.)

Mattison also alleges that he qualified for 480 hours of "Family Medical Leave" time and 688 hours of "Health & Welfare" time as of September 1, 2020. (*Id.* ¶ 64.) Mattison contacted his supervisor in September 2020 to alert him that he was taking FMLA leave due to a diverticulitis flare up, and he requested no more than 10 days' leave in September and October 2020. (*Id.* ¶ 80.) At no time did the MTA advise Mattison that he could not take such leave. (*Id.* ¶ 81.)

Rather, Mattison alleges that—in cases where an employee has taken FMLA leave for which approval is pending—the MTA will apply sick days, vacation days, or accumulated "Health & Welfare" days. (*Id.* ¶ 63.) Mattison also alleges that the MTA FMLA office autoreply indicated that, if an employee has met minimum eligibility requirements for FMLA leave (i.e., employed with the MTA for 12 months, has worked 1,250 hours in the past 12 months, and has sufficient FMLA hours accumulated), that employee can use FMLA benefits provisionally while awaiting approval. (*Id.* ¶ 65.) The autoreply further stated that, if an FMLA request is subsequently denied, the employee was to "work with [his or her] Department/Division to coordinate alternative options for managing [his or her] ongoing intermittent absences." (*Id.* ¶ 66.) Mattison describes a

4

colleague who took such provisional FMLA leave on September 6, 2020 while that employee's application for FMLA leave was pending, which the MTA initially logged as "Sicklist or WCI" time and which the MTA reclassified as FMLA leave once the application was approved. (*Id.* ¶¶ 72–73.)

Although Mattison initially filed suit in the Circuit Court for Baltimore City on May 8, 2020,[2] service was not effected until December 21, 2020. (*Id.* ¶ 87.) The MTA then removed this action to this Court on January 20, 2021.

Mattison was ultimately terminated in a letter dated January 13, 2021. (*Id.* ¶ 85.) He was terminated for "engag[ing] in fraud by intentionally taking unauthorized FMLA leave." (*Id.* ¶ 54.) At Mattison's February 5, 2021 and March 9, 2021 termination and appeal hearings, the MTA explained that he was terminated because he "never submitted an application for FMLA and took leave knowing that he had not submitted an application." (*Id.* ¶¶ 55, 88.) After Mattison provided evidence that his physician had submitted an application, the MTA explained that Mattison was terminated because "it was not evident who had filled out the form" and Mattison "may have forged it." (*Id.* ¶ 56.) The MTA has since confirmed with Mattison's physician that his office did submit the application. (*Id.* ¶ 57.) The MTA now alleges that Mattison had not worked sufficient hours to be eligible for FMLA leave in September 2020, an issue the MTA did not raise during Mattison's termination hearing or appeal, but rather raised for the first time in the MTA's Motion to Dismiss Plaintiff's First Amended Complaint. (*Id.* ¶ 58.)

---

[2]     The exact date on which this action commenced in the Circuit Court for Baltimore City is in dispute. Mattison contends that it commenced on May 8, 2020, while the MTA argues the correct date is May 13, 2020. As discussed in more detail below, the Court assumes the instant suit began on May 8, 2020.

## II.     Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.    Analysis

The MTA makes several arguments in support of its Motion to Dismiss. Its threshold arguments include that the ADA claims (Count II) must be dismissed due to sovereign immunity and that acts prior to May 13, 2018 are time-barred. The MTA also attacks the merits of Mattison's claims, arguing that he fails to state a claim with respect to his Rehabilitation Act, MFEPA, and FMLA claims (Counts I, III, and IV).

This Court finds that all ADA claims in Count II must be dismissed due to sovereign immunity and that claims based on acts prior to May 8, 2018 are time-barred, such as Mattison's discriminatory demotion claim in Count III. Further, the Court concludes that Mattison's disparate treatment claims in Counts I and III must be dismissed for failure to state a claim. Mattison's

remaining claims (retaliation and retaliatory termination in Counts I, III, and IV; failure to accommodate in Count I; and hostile work environment in Count I) are not dismissed.

### A. Threshold Issues

As noted, the MTA makes two threshold arguments in support of its Motion to Dismiss: (1) that the ADA claims must be dismissed due to sovereign immunity and (2) that acts prior to May 13, 2018 are time-barred. The Court agrees that the ADA claims must be dismissed. The Court finds that suit was commenced on May 8, 2020 and that, therefore, acts on or after May 8, 2018 are not time-barred.

### 1.   Sovereign Immunity

The MTA argues that it is entitled to sovereign immunity as to Mattison's ADA claims (Count II). (Mot. Dismiss Mem. Supp. at 9, ECF No. 37.) The Court agrees. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "This protection extends to state agencies," which includes the MTA. *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). Further, "[b]ecause sovereign immunity is waivable, this Court treats it 'akin to an affirmative defense,' meaning that the defendant bears the burden of demonstrating that sovereign immunity applies." *Zito v. N.C. Coastal Res. Comm'n*, 8 F.4th 281, 284 (4th Cir. 2021) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

The Fourth Circuit has noted three exceptions to sovereign immunity. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). These exceptions are:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief

7

against state officials acting in violation of federal law . . . . Third, a State remains free to
waive its Eleventh Amendment immunity from suit in a federal court.

*Id.* (internal citations and quotations omitted).

None of these exceptions apply here. First, Congress has not validly abrogated sovereign
immunity with respect to Mattison's ADA claims against the MTA. *See Garrett*, 531 U.S. at 374
(finding that Congress did not validly abrogate sovereign immunity with respect to employment
discrimination claims under Title I of the ADA); *Cook v. Springfield Hosp. Ctr.*, Civ. No. ELH-
16-2024, 2016 WL 6124676, at *8 (D. Md. Oct. 19, 2016) ("Because [plaintiff's] Title V claim is
predicated on her Title I claim, the Supreme Court's decision in *Garrett* barring her Title I claim
based on sovereign immunity also bars her Title V claim.").

Second, although he seeks injunctive relief, Mattison has named only the MTA and no state
officials as defendants in this suit. *See McCray*, 741 F.3d at 483 (explaining that "absent
abrogation of sovereign immunity or consent from Maryland, [plaintiff] cannot seek injunctive or
monetary relief from the MDOT or MTA").

Third, Maryland has not waived its sovereign immunity with respect to Mattison's ADA
claims. *See Bozarth v. Md. State Dep't of Educ.*, Civ. No. DLB-19-3615, 2021 WL 1225448, at
*9 (D. Md. Mar. 31, 2021) (explaining that Maryland has not waived sovereign immunity as to
ADA Title I cases). In addition, the MTA's removal of this case to federal court does not waive
sovereign immunity. *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) ("In
this circuit, a state's removal of a suit to federal court waives sovereign immunity only if the state
has consented to suit in its own courts.").

Accordingly, Mattison's ADA claims (Count II) will be dismissed.

## 2. *Statute of Limitations*

The statute of limitations for Mattison's MFEPA and Rehabilitation Act claims is two

years. *See Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 660 (4th Cir. 2018) ("The

MFEPA, therefore, is the most analogous Maryland cause of action to [plaintiff's] Rehabilitation

Act claims, and its two-year statute of limitations governs her case."). The MTA argues that any

acts prior to May 13, 2018 are time-barred because the original complaint was filed on May 13,

2020. (Mot. Dismiss Mem. Supp. at 11–13.) Mattison alleges that the Complaint was filed on

May 8, 2020. (Sec. Am. Compl. ¶ 87.)

The Case Information sheet from the Baltimore City Circuit Court indicates that the "Filing

Date" of this action is May 8, 2020. (Opp'n to Mot. Dismiss Ex. 1, ECF No. 45-1.) The Court

will therefore consider any acts that occurred on or after May 8, 2018 as timely.

However, Mattison alleges discriminatory demotion under the MFEPA (Count III). The

only demotion apparent in the pleadings is a demotion in June 2012. (Sec. Am. Compl. ¶ 13.)

This is a discrete act, which is time-barred because it occurred nearly eight years before Mattison

filed this action. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 113–14 (2002) ("[D]iscrete

discriminatory acts [such as termination, failure to promote, denial of transfer, or refusal to hire]

are not actionable if time barred, even when they are related to acts alleged in timely filed

charges.").[3]

---

[3]      Mattison further argues that his claims were tolled pursuant to the Court of Appeals of Maryland's
Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules
Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters
("Maryland Court of Appeals Order"). Mattison misquotes the order, arguing that it applies to "'matters to be filed in
a Maryland state trial or appellate court . . .'" (Opp'n to Mot. Dismiss at 12, ECF No. 48 (quoting Maryland Court of
Appeals Order)). However, the Maryland Court of Appeals Order applies only to "matters *required* to be filed in a
Maryland state trial or appellate court." Maryland Court of Appeals Order at 2 (emphasis added). This is not such a
matter.
         Further, Mattison urges the Court to apply the continuing violation doctrine to his claims. However, the
continuing violation doctrine does not apply to discrete acts, such as his demotion in 2012. *Morgan*, 536 U.S. at 113–
14. It is true that hostile work environment claims "are different in kind from discrete acts" and the continuing

### B.  Failure to State a Claim

Beyond these threshold objections, the MTA argues that Mattison has substantively failed to state claims for retaliation and retaliatory termination, failure to accommodate, hostile work environment, and disparate treatment in Counts I, III, and IV.  These arguments fail as to the retaliation and retaliatory termination, failure to accommodate, and hostile work environment claims.  However, because Mattison fails to state a claim of disparate treatment, his disparate treatment claims in Counts I and II are dismissed.

### 1.   Retaliation and Retaliatory Termination (Counts I, III and IV)[4]

The MTA argues that Mattison's retaliation claims should be dismissed for failure to state a claim largely because Mattison fails to establish causation.  (Mot. Dismiss Mem. Supp. at 13–20.)  However, he adequately states a claim for retaliation and retaliatory termination.

To state a claim for retaliation under the Rehabilitation Act, MFEPA, and FMLA, a plaintiff must allege "(1) that [he] engaged in protected activity; (2) that [his] employer took an adverse action against [him]; and (3) that a causal connection existed between the adverse activity and the protected action." *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 877 (4th Cir. 2020) (citing *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 578 (4th Cir. 2015)) (Rehabilitation Act and MFEPA); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (FMLA).  To bring a retaliation claim under the FMLA, a plaintiff must also allege that he was eligible for FMLA leave.  *See Schmidt v. Town of Cheverly, Md.*, Civ. No. GJH-13-3282, 2014 WL 4799039,

---

violation doctrine could therefore apply to such claims. *Id.* at 115, 117–18. However, although the timeline in the Second Amended Complaint is at times unclear, Mattison's allegations relating to a hostile work environment all appear to occur within the limitations period (i.e., on or after May 8, 2018) and there is therefore no reason to apply the continuing violations doctrine. Further, Mattison himself indicates that, after he settled with the MTA in 2017 and prior to being on Workman's Compensation leave beginning in July 2017, he "was left alone by his supervisors and enjoyed a stress-free work environment." (Sec. Am. Compl. ¶ 19.)

[4]     Mattison raises for the first time in his Opposition an FMLA interference claim. The proper avenue for asserting new claims is not in a response to a motion to dismiss, but by amending the pleadings. *See* Fed. R. Civ. P. 15.

at *6 (D. Md. Sept. 25, 2014) ("An employee attempting to engage in a non-existent right cannot establish the first element of a *prima facie* case because he or she has not engaged in a protected activity under the FMLA.")   With respect to the second prong, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations and quotations omitted).   Finally, "to demonstrate a causal connection, a plaintiff must establish 'but-for' causation." *Miller*, 813 F. App'x at 877 (citing *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235 (4th Cir. 2016)).   At this stage, Mattison must only allege facts "supporting a 'reasonable inference' of causation." *Id.* at 878 (citing *Iqbal*, 556 U.S. at 678). Mattison satisfies all three elements required to state a claim under each statute.

First, Mattison engaged in protected activity on several occasions, including filing EEOC complaints in 2012 and 2018, filing a lawsuit in 2015, filing a grievance in 2018, attempting to take FMLA leave, arguably requesting a reasonable accommodation (discussed in more detail below), and filing the instant lawsuit in 2020. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 273 (4th Cir. 2001) (explaining that both formal and informal complaints alleging discrimination can form the basis of a retaliation claim); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 n. 3 (4th Cir. 2001) (explaining that a request for reasonable accommodation can form the basis of a retaliation claim); *Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 655–56 (D. Md. 2013) ("Plaintiff has pled adequately that he engaged in protected activity by attempting to take FMLA leave.").   In addition, with respect to the FMLA claim, taking the facts in the light most favorable to Mattison, he has adequately pleaded that he was eligible for FMLA leave when he requested it.

Second, the MTA allegedly took adverse action against Mattison. He was taken out of service to be terminated in May 2018, he has not been provided his full backpay and has not been restored his sick leave for the time that he was taken out of service, and he was ultimately terminated in January 2021. These are all adverse actions for purposes of a retaliation claim. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) ("[Plaintiff] was first reassigned from her regular off-line position to perform janitorial duties. In addition to her reassignment, [plaintiff] was, in fact, terminated. Both of these actions might have dissuaded a reasonable worker from advancing a charge of discrimination."); *Fink v. Richmond*, Civ. No. DKC-2007-0714, 2009 WL 3216117, at *11 (D. Md. Sept. 29, 2009), aff'd, 405 F. App'x 719 (4th Cir. 2010) ("Plaintiff's . . . contentions that she did not receive paychecks for two months and was placed on leave without pay constitute adverse employment actions.").

Further, the Court finds that Mattison's allegations regarding the harassment he endured— including being targeted to perform junior-level work that caused him to work past his scheduled shift, being hyper-criticized, and being verbally reprimanded or written up if he did not meet certain arbitrary time limits that were not imposed on his colleagues—are sufficiently adverse to survive a motion to dismiss. Although individually these instances of harassment may not rise to the level of an adverse action, when considered as a whole, a reasonable employee may well have been dissuaded from engaging in protected activities as a result of the alleged harassment.

Third, the facts as alleged support a reasonable inference of but-for causation. At his termination hearing in June 2018, MTA officials allegedly explicitly stated that Mattison had previously sued the MTA and that they were "attempting to get rid of him." (Sec. Am. Compl. ¶ 31.) Although there is a significant amount of time that passed between his protected conduct (filing the EEOC charges in 2012 and filing a lawsuit in 2015) and an adverse employment action

12

(beginning with being suspended in May 2019), this explicit indication that the MTA was attempting to rid itself of Mattison due to his prior lawsuit against the MTA is sufficient to support an inference of causation at this stage. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen-month interval between the charge and termination is too long to establish causation *absent other evidence of retaliation*.") (emphasis added).

Further, the timing of the other allegedly adverse employment actions—such as the alleged harassment and January 13, 2021 termination—supports a reasonable inference that the MTA retaliated against Mattison for engaging in protected activity. While "temporal proximity alone cannot create a genuine dispute as to causation, . . . when the temporal proximity is particularly close, it weighs heavily in favor of finding at least a genuine dispute as to causation." *Miller*, 813 F. App'x at 879 (citations and quotations omitted). Mattison alleges that he filed an EEOC claim in June 2018 and that, thereafter, the MTA "amped up its campaign of harassment and retaliation" to such an extent that Mattison filed an additional grievance against his supervisor in October 2018. (Sec. Am. Compl. ¶ 33.) Mattison also alleges that the instant lawsuit was served on the MTA on December 21, 2020 and that he was terminated less than a month later, on January 13, 2021, just days before the MTA removed the case to federal court. (*Id.* ¶¶ 51, 87.) These facts support an inference of causation. Although the MTA provided non-discriminatory reasons for some of these adverse employment actions, Mattison is not required at this stage to plead that the MTA's explanation was pretextual. *See Miller v. BrightKey, Inc.*, Civ. No. JKB-21-0995, 2021 WL 3129635, at *9 (D. Md. July 22, 2021) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)) ("Requiring Plaintiff to plead that Defendant's explanation was pretextual would transform the *McDonnell Douglas* standard from 'a flexible evidentiary standard . . . into a rigid

pleading standard for discrimination cases,' exactly what the Supreme Court rejected in *Swierkiewicz*.").

### 2.   *Failure to Accommodate (Count I)*

The MTA argues that Mattison did not request a reasonable accommodation, as the alleged requested accommodation—FMLA leave—is a statutory entitlement and therefore not an accommodation subject to an employer's discretion. (Mot. Dismiss Mem. Supp. at 21.) The Court finds that Mattison sufficiently alleged a failure to accommodate.

To establish a prima facie case for failure to accommodate under the Rehabilitation Act, Mattison must show: (1) he was an individual with a disability; (2) the MTA had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the position; and (4) the MTA refused to make such accommodations. *Edmonson v. Potter*, 118 F. App'x 726, 728 (4th Cir. 2004) (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001)).

The MTA does not dispute that Mattison has otherwise sufficiently alleged these elements, arguing only that a request for FMLA leave is not a request for a reasonable accommodation. However, a request for FMLA leave may serve as a request for reasonable accommodation. *See Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 147 (3d Cir. 2017) (explaining that "under certain circumstances, a request for intermittent FMLA leave may also constitute a request for a reasonable accommodation"); *Beishl v. Cnty. of Bucks*, Civ. No. 18-2835, 2018 WL 6812132, at *4 (E.D. Pa. Dec. 27, 2018) ("[A] prospective request for periodic FMLA leave may serve as a request for reasonable accommodation."); *Cowgill v. First Data Techs., Inc.*, Civ No. ADC-19-2565, 2021 WL 1224059, at *9 (D. Md. Apr. 1, 2021) (assuming, *arguendo*, that plaintiff's "FMLA request constitutes a reasonable accommodation request"). Further, there is a "duty to engage in an interactive process to identify a reasonable accommodation," which "is generally

14

triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013).

Here, Mattison has sufficiently alleged·that he requested an accommodation, albeit in the form of a request for intermittent FMLA leave and notification to his supervisor that he was taking such leave. Mattison further sufficiently alleges that the MTA did. not engage in an interactive process to identify the appropriate accommodation. Indeed, as Mattison alleges, this failure occurred even though the MTA FMLA office itself contemplates an interactive process if FMLA leave is denied and even though Mattison allegedly was both entitled to FMLA leave and had accumulated 688 hours of "Health & Welfare" leave.

### 3.   *Hostile Work Environment (Count I)*

The MTA makes two arguments as to why Mattison fails to state a hostile work environment claim in Count I. The MTA argues first that Mattison does not allege that the harassment he endured was based on his disability or his participation in protected activity and second that the harassment was not sufficiently severe or pervasive to amount to a hostile work environment. (Mot. Dismiss Mem. Supp. at 25–26.) The Court finds that Mattison has sufficiently alleged a hostile work environment claim.

To establish a hostile work environment claim, Mattison must demonstrate that the alleged conduct: "(1) was unwelcome; (2) resulted because of [his] . . . disability[] or prior protected activity; (3) was 'sufficiently severe or pervasive' to alter the conditions of [his] employment; and (4) was imputable to [his] employer." *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009) (citing *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (en banc)). To determine whether the conduct was sufficiently severe or pervasive, courts review the totality of·

the circumstances, which includes "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ocheltree*, 335 F.3d at 333 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

There is no dispute as to the first or fourth elements; rather, the MTA focuses its arguments on the second and third elements. As to the second element, the MTA argues that Mattison "does not tie any of the treatment to either his disability or his lawsuit." (Mot. Dismiss Mem. Supp. at 26.) However, as discussed above, Mattison has sufficiently pleaded that he was subjected to harassment due to his participation in protected conduct, and his protected conduct encompassed more than simply his filing of the 2015 or instant lawsuits.

As to the third element, the MTA attempts to simplify Mattison's allegations relating to a hostile work environment down to only a few acts, including "being charged with unjustified absences [and] suspended without pay with the intent to terminate him, and not being fully compensated the amount due to him or restor[ed] his sick leave." (Mot. Dismiss Mem. Supp. at 25. (quoting Sec. Am. Compl. ¶ 104) (quotations and alterations omitted).) However, Mattison alleges numerous other instances of harassment, including being targeted to perform junior-level work that caused him to work past his scheduled shift, being hyper-criticized, and being verbally reprimanded or written up if he did not meet certain arbitrary time limits that were not imposed on his colleagues. (Sec. Am. Compl. ¶¶ 33, 36, 43–50.) Mattison alleges that this harassment caused undue stress, which exacerbated his health conditions. (*Id.* ¶ 33–34.) Individually, the instances of alleged harassment may not rise to the level of conduct sufficiently severe so as to alter the conditions of his employment. However, taken as a whole, the harassing conduct was sufficiently pervasive that it may have altered the conditions of his employment. *Farr v. S.C. Elec. & Gas*

16

*Co.*, Civ No. RMG-3:16-2668, 2018 WL 1418183, at \*8 (D.S.C. Mar. 21, 2018) (denying a motion for summary judgment where, although most allegations "amount[ed] to trivial workplace adversities or statements of annoyance or frustration from management," collectively such conduct may have "altered the conditions of his employment"). The Court therefore finds that Mattison sufficiently alleged that he was subjected to a hostile work environment.

### 4.  *Disparate Treatment (Counts I and III)*

Mattison alleges that he was subjected to disparate treatment based on his disability when he was suspended in July 2018 and when he was denied FMLA leave, but the MTA argues, *inter alia*, that Mattison fails to allege any facts that these actions were due to his disability. (Mot. Dismiss Mem. Supp. at 25.) The Court agrees and accordingly dismisses Mattison's disparate treatment claims (in Counts I and III).

To establish a claim for disparate treatment, a plaintiff must prove: "(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." *Atkins v. Holder*, 529 F. App'x 318, 319–20 (4th Cir. 2013) (citations and quotations omitted) (quoting *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)).

Mattison does not allege that any of the allegedly adverse employment actions to which he was subjected were due to his disability. Rather, his allegations appear to lay out a pattern of retaliatory conduct based on Mattison's participation in protected activity, as discussed above. While these allegations are troubling, they are more appropriately considered in a claim for retaliation, rather than for disparate treatment based on disability.

## IV.    *Conclusion*

For the reasons set forth in the foregoing Memorandum, the MTA's Motion to Dismiss

(ECF No. 37) will be GRANTED IN PART and DENIED IN PART.


DATED this 30 day of September, 2021.

BY THE COURT:

James K. Bredar
Chief Judge

18